IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| POLAR ELECTRO OY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 11-1100-GMS |
| | ) |
| SUUNTO OY, AMER SPORTS WINTER & | ) |
| OUTDOOR d/b/a SUUNTO USA, and | ) |
| FIRSTBEAT TECHNOLOGIES OY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

## I. INTRODUCTION

The plaintiff Polar Electro Oy ("Polar") filed this patent infringement lawsuit against defendants Suunto Oy ("Suunto"), Amer Sports Winter & Outdoor ("ASWO"), and Firstbeat Technologies Oy ("Firstbeat") (collectively, "the Defendants"). (D.I. 1.) Polar alleges that the Defendants infringe U.S. Patent Nos. 5,611,346 and 6,537,227 ("patents-in-suit").

Before the court is Suunto's motion to dismiss for lack of personal jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). Suunto originally filed its motion on January 26, 2012. (D.I. 22.) The court issued an Order on September 15, 2014, holding Suunto's motion in abeyance while the parties engaged in jurisdictional discovery. (D.I. 37.) On March 13, 2015, Suunto filed a supplemental brief, renewing its original motion to dismiss for lack of personal jurisdiction.[1] (D.I. 58.) For the reasons that follow, the court will grant Suunto's motion to dismiss. (D.I. 22.)

---

[1] Firstbeat also filed a motion to dismiss for lack of personal jurisdiction in 2012. (D.I. 25.) Firstbeat withdrew its motion after the completion of jurisdictional discovery. (D.I. 72.)

## II.     BACKGROUND

Polar is a company operating and existing under the laws of Finland, with its principal place of business in Kempele, Finland.  (D.I. 1, ¶ 1.)  Suunto is also a Finnish company, with its principal place of business in Vaanta, Finland.  (*Id.* ¶ 2.)  Polar alleges that Suunto's accused products infringe the patents-in-suit, which relate generally to heart-rate monitoring for athletic performance applications.

Suunto does not sell its accused products directly in the United States.  ASWO, a Delaware corporation, contracts with Suunto to distribute Suunto products in the United States. ASWO is responsible for working with brick-and-mortar retailers in the United States (including Delaware).  There are three retail stores selling Suunto products in Delaware.  Customers can use the "Dealer Locator" feature of the Suunto website—suunto.com/us—to locate the physical addresses of these retailers in Delaware.  ASWO maintains this feature.

Moreover, ASWO fulfills online orders of Suunto products made through the Suunto website, via its own e-commerce platform.  Therefore, although U.S. customers search for products on the Suunto website, they actually transact with ASWO to make a purchase.  To date, eight e-commerce transactions have been made in Delaware.

Suunto has other contacts with the United States at large, but not specifically with Delaware.  In particular, Suunto has worked with a U.S. market research group to study the U.S. market generally.   Suunto has also engaged other U.S. entities—*e.g.*, retailers, equipment makers, trail race organizers—to help build Suunto brand recognition nationwide.

## III.     STANDARD OF REVIEW

The court must dismiss a case when it lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2);  *Freres v. SPI Pharma, Inc.*, 629 F. Supp. 2d 374, 382 (D. Del. 2009).

The plaintiff bears the burden of establishing that the defendants are properly subject to the court's jurisdiction. *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2792 (2011) (Breyer, J., concurring); *ICT Pharms., Inc. v. Boehringer Ingelheim Pharms., Inc.*, 147 F. Supp. 2d 268, 270–71 (D. Del. 2001).

Personal jurisdiction is derived from two separate sources: state statutory law and U.S. constitutional due process. *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359–60 (Fed. Cir. 2001). The Delaware long-arm statute provides in relevant part:

> [A] court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> 1. Transacts any business or performs any character of work or service in the State;
>
>    . . . .
>
> 3. Causes tortious injury in the State by an act or omission in this State;
> 4. Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

Del. Code Ann. tit. 10, § 3104(c) (West). The statute has been construed "broadly to confer jurisdiction to the maximum extent possible under the Due Process Clause." *Merck & Co., Inc. v. Barr Labs., Inc.*, 179 F. Supp. 2d 368, 372 (D. Del. 2002) (citing *Hercules Inc. v. Leu Trust & Banking Ltd.*, 611 A.2d 476, 480–81 (Del. 1992)).

Due process must also support the exercise of personal jurisdiction. "[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement*,

326 U.S. 310, 316 (1945) (internal quotation marks omitted). Since the Supreme Court initially announced the concept of "minimum contacts" in *International Shoe*, the doctrine has split into two categories: specific and general jurisdiction. Specific jurisdiction exists where "the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985) (internal citations omitted) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). In contrast, general jurisdiction does not require that the cause of action arise out of contacts with the forum state. *Helicopteros*, 466 U.S. 408 at 421. Rather, general jurisdiction exists where the defendant's contacts with the forum "are so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).

## IV. DISCUSSION

Polar bears the burden of establishing the court's jurisdiction. *See Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008). Polar asserts that Suunto meets the criteria outlined in the Delaware long-arm statute. Polar also maintains that the exercise of jurisdiction over Suunto comports with due process under a theory of specific jurisdiction. Alternatively, Polar argues that the federal long-arm statute supports the court's exercise of jurisdiction over Suunto. *See* Fed. R. Civ. P. 4(k)(2).

### A. Delaware Long-Arm Statute

The Delaware long-arm statute jurisprudence is not a model of clarity. *See Round Rock Research LLC v. ASUSTeK Computer Inc.*, 967 F. Supp. 2d 969, 973 (D. Del. 2013)

4

("Interpretation of the Delaware long-arm statute has resulted in some decisions that offer conflicting principles."). "Delaware law is . . . unclear as to whether or not the long arm statute is coextensive with the due process clause." *Commissariat A L'Energie Atomique v. Chi Mei Optoelecs. Corp.*, 395 F.3d 1315, 1322 (Fed. Cir. 2005). While Delaware courts often emphasize that the statute is to be construed to the maximum extent allowed by due process, "the Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis." *Merck*, 179 F. Supp. 2d at 372; *accord ICT Pharms.*, 147 F. Supp. 2d at 271 n.4. As such, until the Delaware Supreme Court says otherwise, "the court must consider the specific requirements of the Delaware long-arm statute before going on to the constitutional issues." *Intel Corp. v. Silicon Storage Tech., Inc.*, 20 F. Supp. 2d 690, 695 (D. Del. 1998).[2]

Polar argues that its "direct" sales in Delaware satisfy section 3104(c)(1) and (c)(3)—the "specific jurisdiction" provisions of the long-arm statute. *See Round Rock*, 967 F. Supp. 2d at 974. But as the court already indicated, Polar does not in fact conduct *direct* sales in Delaware— ASWO does. "Section 3104(c)(1) requires that the defendant perform an act in Delaware, which does not occur '[w]hen a manufacturer passes title to goods to a third party outside of Delaware.'" *Id.* at 975 (alteration in original) (quoting *Boone v. Oy Parte AB*, 724 A.2d 1150, 1156 (Del. Super. Ct. 1997), *aff'd*, 707 A.2d 765 (Del.1998)). Jurisdictional discovery confirmed—and Polar does not dispute—that Suunto passes title to ASWO outside of the United States. Section 3104(c)(3) is also not met. Again, although selling an infringing product in Delaware satisfies "tortious injury" under this subsection, Suunto does not *sell* its products here. *See id.*

---

[2] Several courts, while purporting to apply a two-prong analysis, have in fact combined the statutory and due process inquiries. *See, e.g.*, *L'Athene, Inc. v. EarthSpring LLC*, 570 F. Supp. 2d 588, 593–94 (D. Del. 2008); *Kloth v. S. Christian Univ.*, 494 F. Supp. 2d 273, 279–81 (D. Del. 2007), *aff'd*, 320 F. App'x 113 (3d Cir. 2008).

Polar argues that purchases made from Suunto's website qualify as Suunto's direct sales, even though ASWO fulfills the online sales. But ASWO and Suunto are separate entities—indeed, Polar does not assert that ASWO's conduct is attributable to Suunto under an agency theory. The court does not accept Polar's position that Suunto is improperly "insulating" itself by using ASWO as a distributor. (D.I. 64 at 9 (citing *Food Scis. Corp. v. Nagler*, No. 09-1798 (JBS), 2010 WL 1186203, at \*4 (D.N.J. Mar. 22, 2010)).) While it is true that Suunto owns the website, "[t]he 'mere operation of a commercially interactive website' is not by itself a sufficient basis for jurisdiction anywhere the site can be viewed." *See L'Athene*, 570 F. Supp. 2d at 593 (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003)). The court can see no evidence of Suunto's intent to sell to Delaware residents specifically through its website, but more importantly Suunto itself makes no sales. Polar repeatedly attempts to obscure this key fact by equating sales made by ASWO with Suunto. But there simply is no support for Polar's matter-of-fact statement that "Suunto directly sells the Accused Products to Delaware residents via its interactive website." (D.I. 64 at 10.)

Polar also argues that, even if no one provision of the Delaware long-arm statute is met, the statute is nonetheless satisfied under a theory of "dual jurisdiction." "[T]he dual jurisdiction concept arises from at least partial satisfaction of subsections (1) and (4) of the Delaware long-arm statute. . . . Dual jurisdiction may be established when a manufacturer has sufficient general contacts with Delaware and the plaintiffs' claims arise out of those contacts." *Graphics Props. Holdings, Inc. v. ASUS Computer Int'l*, No. 13-864-LPS, 2014 WL 4949589, at \*3 (D. Del. Sept. 29, 2014) (quoting *Belden Techs., Inc. v. LS Corp.*, 829 F. Supp. 2d 260, 267 (D. Del. 2010)). This theory is often referred to as "stream of commerce" jurisdiction and is satisfied with a showing of "(1) an intent to serve the Delaware market; and (2) . . . this intent results in the

introduction of the product into the market and that plaintiff's cause of action arises from injuries caused by that product." *Id.* at 5.

To compound the complexity surrounding the Delaware long-arm statute, courts within this District are also in disagreement as to the viability of the dual-jurisdiction theory as a basis for satisfying the statute. *Compare id.* at 4–5 (applying dual jurisdiction), *with Round Rock*, 967 F. Supp. 2d at 976–77 (rejecting dual jurisdiction).[3] Nonetheless, given the Delaware Supreme Court's failure to repudiate the doctrine, despite numerous opportunities to do so, the court will attempt to apply the dual-jurisdiction theory.[4] *See Graphics Props.*, 2014 WL 4949589, at *5.

The first element is whether there is an "intent to serve the Delaware market." *Id.* "A non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market, unless there is evidence that the firm intended to exclude from its marketing and distribution efforts some portion of the country that includes Delaware." *Id.* (quoting *Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 373 (D. Del. 2008)). Suunto's relationship with ASWO clearly demonstrates an intent to serve the United States market at large. Indeed, Suunto does not dispute this. Thus, although the court is doubtful that Polar has established an intent to serve Delaware in particular, the first element is

---

[3] The confusion is rooted in the Delaware courts' conflicting directions that, as already noted, the Delaware long-arm statute is to be construed to the maximum extent allowed by due process, but also that a separate inquiry is to be performed. *Merck*, 179 F. Supp. 2d at 372. This leads to the duplicative and perplexing task of applying due process jurisprudence to the Delaware statute before also applying it as an independent analysis. *See, e.g., Graphics Props.*, 2014 WL 4949589, at *5–7 (discussing *McIntyre*, 131 S. Ct. 2780, in both prongs of the jurisdiction analysis). Thus, dual jurisdiction as a theory is especially problematic because it rings of the due process inquiry—after all, the "stream of commerce" has long been discussed in the context of due process, *see, e.g., World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298 (1980)—while applying a different standard. In the court's view, the Delaware Supreme Court could achieve better clarity by "collapsing" the long-arm statute and due process analyses, "as some courts have done." *See ICT Pharms.*, 147 F. Supp. 2d at 271 n.4. If the intent is truly to give maximum scope to the long-arm statute, the court can discern no benefit to performing separate analyses, especially given the headaches that courts have incurred in doing so.
[4] The court expresses some doubt that the current doctrine of dual jurisdiction comports with recent Constitutional cases. *See infra* note 5.

satisfied. Moreover, there is no dispute that Polar alleges patent infringement for Suunto products that are sold in Delaware. The court is therefore satisfied that dual jurisdiction (at least as presently articulated) is met, and the Delaware long-arm statute is satisfied.

### B. Due Process

Polar asserts that the court may exercise specific jurisdiction over Suunto.[5] "Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 131 S. Ct. at 2851 (internal quotation marks and alterations omitted). Under a specific jurisdiction inquiry, minimum contacts exist where "the defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472 (internal quotation marks and citations omitted). Assuming minimum contacts are met, the court may exercise specific jurisdiction so long as doing so would "comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

Courts have struggled to grasp a firm definition of "purposeful" direction or availment. In the Supreme Court's most recent discussion of specific jurisdiction in *McIntyre*, Justice Kennedy outlined an exacting standard in his plurality opinion: "The defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have *targeted* the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *McIntyre*, 131 S. Ct. at 2788 (plurality opinion) (emphasis added). In other words, that the defendant foresees *or even knows* that its products will reach a particular forum is not enough to demonstrate "purpose." There must be evidence of affirmative

---

[5] Polar does not assert general jurisdiction as a basis for the court's jurisdiction. Therefore, the court will not discuss the doctrine.

targeting. Although the plurality is not binding precedent, together with Justice Breyer's concurrence, *McIntyre* confirms that releasing a product into the stream of commerce, without "something more," cannot furnish a basis to exercise jurisdiction. *See id.* at 2792 (Breyer, J., concurring) ("[A] single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place." (citing *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 111–12 (1987))).

Here, Suunto sells its products through a U.S. distributor: ASWO. As Polar itself acknowledges, the goal of the distribution agreement is to increase Suunto's market share in the United States at large, without any particular focus on Delaware (or any state for that matter). ASWO's ultimate dealings with retailers in Delaware may have been foreseeable, but the court sees no evidence of intent—there is not "something more" beyond placing the product into the stream of commerce. *Id.* ("[T]here is no 'something more,' such as *special* state-related design, advertising, advice, marketing, or anything else." (emphasis added)). Polar would infer an intent to serve the Delaware market because Delaware is listed as a "drop-down" option on the Suunto website's "Dealer Locator" feature. Notwithstanding the fact that jurisdictional discovery revealed that ASWO maintains the Dealer Locator feature, the court cannot accept Polar's contention that Delaware's inclusion on the website—along with every other state—indicates anything other than a general intent to serve the national U.S. market. *McIntyre* precludes finding specific jurisdiction on this basis. *McIntyre*, 131 S. Ct. at 2790 (plurality opinion); *id.* at 2791 (Breyer, J., concurring); *see also Oticon, Inc. v. Sebotek Hearing Sys., LLC*, 865 F. Supp. 2d 501, 413 (D.N.J. 2011) ("[*McIntyre*] stands for the proposition that targeting the

national market is *not* enough to impute jurisdiction to all the forum States.").[6] Similarly, the

online purchases, fulfilled by ASWO, also do not offer a basis to infer intent: a mere eight total

online sales cannot be considered "special" attention to Delaware. *See McIntyre*, 131 S. Ct. at

2792 (Breyer, J., concurring).

For the foregoing reasons, due process considerations prevent the court's exercise of

jurisdiction over Suunto.

## C. **Federal Long-Arm Statute**

Federal Rule of Civil Procedure 4(k)(2) states:

> *Federal Claim Outside State-Court Jurisdiction.* For a claim that
> arises under federal law, serving a summons or filing a waiver of
> service establishes personal jurisdiction over a defendant if:
>> (A) the defendant is not subject to jurisdiction in any state's
>> courts of general jurisdiction; and
>> (B) exercising jurisdiction is consistent with the United
>> States Constitution and laws.

The concern underlying Rule 4(k)(2)—known as the federal long-arm statute—is "with

defendants escaping jurisdiction in U.S. federal courts while still having minimum contacts with

the United States." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009)

---

[6] Another Judge in this District reached a contrary result in interpreting *McIntyre*. *See Graphics Props.*, 2014 WL 4949589, at *7. The court respectfully disagrees with *Graphic Properties* regarding this narrow portion of the opinion. Both the plurality and concurring opinions in *McIntyre* show that sales in a forum made through a national distributor do not evince purposeful availment of that forum's laws. *McIntyre*, 131 S. Ct. at 2790 (plurality opinion) ("The distributor agreed to sell J. McIntyre's machines in the United States . . . . These facts may reveal an intent to serve the U.S. market, but they do not show that J. McIntyre purposefully availed itself of the New Jersey market."); *id.* at 2791 (Breyer, J., concurring) ("[T]he British Manufacturer permitted, indeed wanted, its independent American Distributor to sell its machines to anyone in America willing to buy them . . . . In my view, these facts do not provide contacts between the British firm and the State of New Jersey constitutionally sufficient to support New Jersey's assertion of jurisdiction in this case.").

Moreover, at the risk of beating the proverbial dead horse, the court again takes issue with Delaware law's approach to personal jurisdiction. Because the statutory and due process analyses are not unified, the statutory jurisprudence is lagging behind the due process jurisprudence. Specifically, in the context of discussing dual jurisdiction, the court previously quoted that "[a] non-resident firm's intent to serve the United States market is sufficient to establish an intent to serve the Delaware market." *See id.* at 5; *see also Boone*, 724 A.2d at 1160 ("[A] manufacturer who distributes their product through a national or regional distributor have established minimum contacts with the forum state."). In the court's view, this can no longer be considered good law after *McIntyre*. Plainly, at the very least, the law of dual jurisdiction needs updating and clarification.

(emphasis added).  Therefore, "[a] defendant who wants to preclude the use of Rule 4(k)(2) has only to name some other state in which the suit could proceed."  *Id.* at 1414 (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)).

Suunto has acknowledged that it is properly the subject of Utah's jurisdiction.  (D.I. 70 at 6–7.)  This concession is sufficient to defeat Polar's Rule 4(k)(2) argument.

## V.    CONCLUSION

The court cannot exercise personal jurisdiction over Suunto.  Suunto's motion to dismiss is granted.  (D.I. 22.)

Dated: May 12, 2015

UNITED STATES DISTRICT JUDGE